

CAUSE NO. 048 269069 13

| | | |
|---|---|---|
| FIRST COMMAND FINANCIAL SERVICES, INC. and FIRST COMMAND FINANCIAL PLANNING, INC., | § § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § | |
| v. | § § | TARRANT COUNTY, T E X A S |
| DAVINCI FINANCIAL DESIGNS, LLC | § § § | |
| *Defendants.* | § § | JUDICIAL DISTRICT |

## NOTICE OF ARBITRATION AWARD AND APPLICATION FOR PARTIAL CONFIRMATION OF ARBITRATION AWARD

Pursuant to § 171.087 of the Texas Civil Practice and Remedies Code, Applicants First Command Financial Services, Inc., and its wholly-owned subsidiary, First Command Financial Planning, Inc. (collectively, "Applicants") file this Notice of Arbitration Award and Application for Partial Confirmation of Arbitration Award and, in support thereof, respectfully show as follows:

### PARTIES

1.     Applicant First Command Financial Services, Inc. is a corporation organized under the laws of the State of Texas, and has its principal place of business in Fort Worth, Texas.

2.     Applicant First Command Financial Planning, Inc. is a wholly-owned subsidiary of First Command Financial Services, Inc. organized under the laws of the State of Texas, and has its principal place of business in Fort Worth, Texas.

3.     Defendant DaVinci Financial Designs, LLC ("DaVinci") is a South Carolina limited liability registered in the State of Texas as an investment advisory firm and has thus submitted to the jurisdiction of the courts of the State of Texas. DaVinci has consented to service upon it through the

**EXHIBIT A**

Texas Secretary of State and thus may be served at Secretary of State, James E. Rudder Building, 1019 Brazos, Room 220, Austin, Texas 78701, with instructions that the Texas Secretary of State forward service to DaVinci at 3200 Devine Street, Suite 200, Columbia, South Carolina 29205.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Applicants' Notice of Arbitration Award and Application for Partial Confirmation of Arbitration Award based on TEX. CIV. PRAC. & REM. CODE §§ 171.041, *et seq.*

5.      This Court has personal jurisdiction over DaVinci pursuant to TEX. CIV. PRAC. & REM. CODE § 17.042 because DaVinci engages in business in Texas.  DaVinci is registered as an investment advisory firm in Texas.

6.      Venue is proper in this matter under § 171.096 of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

7.      Applicants were the petitioners in an arbitration conducted and administered by the Financial Industry Regulatory Authority ("FINRA"), Case No. 12-01697, styled as *First Command Financial Services, Inc. and First Command Financial Planning, Inc. v. James S. Agostini, Jeanine A. Bodie, Patrick P. Burgess, S. Stanley Hill, Robert S. Paschal, III, Jeb S. Zoller, Stephen E. Simmons, Bradford J. Wilson, LPL Financial LLC and DaVinci Financial Designs, LLC* (the "Arbitration").  A three-member panel of arbitrators in the Arbitration rendered an award on November 5, 2013, a true copy of which is attached hereto as Exhibit "A."

## REQUESTED RELIEF

8.      For the reasons set forth above, Applicants First Command Financial Services, Inc. and First Command Financial Planning, Inc. respectfully requests that the Court grant this

Application for Partial Confirmation; that the Court partially confirm the award concerning

Applicants and Respondent DaVinci Financial Designs, LLC in the Arbitration and attached hereto

as Exhibit "A;" that, pursuant to TEX. CIV. PRAC. & REM. CODE § 171.092, the Court enter a

judgment conforming to the Order Confirming Award; and that, pursuant to TEX. CIV. PRAC. & REM.

CODE § 171.092, the Court award First Command its costs associated with the Application for Partial

Confirmation and any proceedings subsequent to the Application for Partial Confirmation.

Respectfully submitted,

Karen C. Denney
State Bar No. 24036395

HAYNES AND BOONE, L.L.P.
201 Main Street, Suite 2200
Fort Worth, Texas 76102
Telephone:     (817) 347-6600
Telecopy:      (817) 347-6500

OF COUNSEL
BALLARD SPAHR LLP

Ethan H. Cohen
999 Peachtree Street, Suite 1000
Atlanta, GA 30309-3915
Telephone:     (678) 420-9300
Telecopy:      (678) 420-9301

**ATTORNEYS FOR APPLICANTS**

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of this instrument were served on counsel for Defendant via facsimile on this 6th day of November, 2013:

Beth Ann Agostini
74 Grafton Road
Townshend, Vermont 05353

_____
Karen C. Denney

### Award
### FINRA Dispute Resolution

In the Matter of the Arbitration Between:

| | |
|---|---|
| Claimants<br>First Command Financial Planning, Inc.<br>First Command Financial Services, Inc.<br>First Command Securities Corporation | Master Case Number: 12-01697<br>(Consolidated with 12-01688,<br>12-01746, 12-01747 and 12-01748) |

vs.

| | |
|---|---|
| Respondents<br>James Stuart Agostini<br>Jeanine Ann Bodie<br>Patrick Paul Burgess<br>Davinci Financial Designs, LLC<br>Shelby Stanley Hill<br>LPL Financial LLC<br>Robert Sheldon Paschal<br>Stephen Edwin Simmons<br>Bradford Joel Wilson<br>Jeb Stuart Zoller | Hearing Site: Columbia, South Carolina |

In the Matter of the Arbitration Between:

| | |
|---|---|
| Claimant<br>James Stuart Agostini | Subordinate Case Number: 12-01688<br>(Consolidated with 12-01697,<br>12-01746, 12-01747 and 12-01748) |

vs.

| | |
|---|---|
| Respondents<br>First Command Financial Planning, Inc.<br>First Command Securities Corporation | Hearing Site: Columbia, South Carolina |

In the Matter of the Arbitration Between:

| | |
|---|---|
| Claimant<br>Patrick Paul Burgess | Subordinate Case Number: 12-01746<br>(Consolidated with 12-01697,<br>12-01688, 12-01747 and 12-01748) |

vs.

| | |
|---|---|
| Respondents<br>First Command Financial Planning, Inc.<br>First Command Securities Corporation | Hearing Site: Columbia, South Carolina |



FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 2 of 25

In the Matter of the Arbitration Between:

Claimant                                    Subordinate Case Number: 12-01747
Jeb Stuart Zoller                           (Consolidated with 12-01697,
                                            12-01688, 12-01746 and 12-01748)

    vs.

Respondents                                 Hearing Site: Columbia, South Carolina
First Command Financial Planning, Inc.
First Command Securities Corporation

In the Matter of the Arbitration Between:

Claimant                                    Subordinate Case Number: 12-01748
Stephen Edwin Simmons                       (Consolidated with 12-01697,
                                            12-01688, 12-01746 and 12-01747)

    vs.

Respondents                                 Hearing Site: Columbia, South Carolina
First Command Financial Planning, Inc.
First Command Securities Corporation

Nature of the Dispute: Members and Non-Member vs. Member, Associated Persons, and Non-Member

## REPRESENTATION OF PARTIES

For Claimants First Command Financial Planning, Inc. ("First Command Planning"), First Command Securities Corporation ("First Command Securities") and First Command Financial Services, Inc. ("First Command Services"), hereinafter collectively referred to as "Claimants" or "First Command": Ethan H. Cohen, Esq., Ballard Spahr LLP, Atlanta, Georgia; Karen C. Denney, Esq. and Thomas D. Cordell, Esq., Haynes and Boone, LLP, Fort Worth and Houston, Texas; Steven W. Hamm, Esq. and JoAnne Wessinger Hill, Esq., Richardson Plowden & Robinson, P.A., Columbia, South Carolina.

For Respondents James Stuart Agostini ("Agostini"), Jeanine Ann Bodie ("Bodie"), Shelby Stanley Hill ("Hill"), and Bradford Joel Wilson ("Wilson"): Richard J. Morgan, Esq., McNair Law Firm P.A., Columbia, South Carolina.

For Respondents Patrick Paul Burgess ("Burgess"), Robert Sheldon Paschal ("Paschal"), Stephen Edwin Simmons ("Simmons") and Jeb Stuart Zoller ("Zoller"): Justin M. Kata, Esq. and Barney Giese, Esq., The Giese Law Firm, LLC, Columbia, South Carolina.

Respondents Agostini, Bodie, Hill, Wilson, Burgess, Paschal, Simmons and Zoller are also collectively hereinafter referred to as the "Individual Respondents".

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 3 of 25

For Respondent DaVinci Financial Designs, LLC ("DaVinci"): Elizabeth Ann Agostini, Esq., Agostini Law, Townshend, Vermont.

For Respondent LPL Financial LLC ("LPL"): Cory E. Manning, Esq. and Kristen E. Horne, Esq., Nelson Mullins Riley & Scarborough, LLP, Columbia, South Carolina.

## CASE INFORMATION

### The following pleadings were filed in Master Case Number 12-01697:

Statement of Claim and Application for Permanent Injunctive Order filed by Claimants on or about: May 9, 2012.
Original Answer and Counterclaim and Notice of Motion to Combine Claims with Pending FINRA Arbitrations filed by Claimants on or about: October 1, 2012.
First Command Services signed the Submission Agreement: May 9, 2012.
First Command Planning signed the Submission Agreement: May 9, 2012.
First Command Securities signed the Submission Agreement: May 24, 2013.

Statement of Answer and Counterclaim for Abuse of Process against Claimants filed by Respondent LPL on or about: October 12, 2012.
Respondent LPL signed the Submission Agreement: May 15, 2012.

Answer Denying Respondent LPL's Counterclaim filed by Claimants on or about: November 1, 2012.

Answer to Claimants' Statement of Claim filed by the Individual Respondents and Respondent DaVinci on or about: December 14, 2012.
Respondent Agostini signed the Submission Agreement: May 16, 2012.
Respondent Wilson signed the Submission Agreement: May 16, 2012.
Respondent Bodie signed two Submission Agreements: May 16, 2012 and May 22, 2013.
Respondent Paschal signed the Submission Agreement: May 22, 2013.
Respondent Burgess signed the Submission Agreement: May 22, 2013.
Respondent DaVinci signed the Submission Agreement: May 22, 2013.
Respondent Hill signed the Submission Agreement: May 22, 2013.
Respondent Simmons signed the Submission Agreement: May 22, 2013.
Respondent Zoller signed the Submission Agreement: May 22, 2013.

Answer to Counterclaim of First Command, Amended Statement of Claim, Motion to Strike and Motion to Amend Statement of Claim filed by Respondent Agostini on or about: November 12, 2012.

Answer to Counterclaim of First Command, Amended Statement of Claim, Motion to Strike and Motion to Amend Statement of Claim filed by Respondent Burgess on or about: November 15, 2012.

Answer to Counterclaim of First Command, Amended Statement of Claim, Motion to Strike and Motion to Amend Statement of Claim filed by Respondent Zoller on or about: November 15, 2012.

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 4 of 25

Answer to Counterclaim of First Command, Amended Statement of Claim, Motion to
Strike and Motion to Amend Statement of Claim filed by Respondent Simmons on or
about: November 15, 2012.

Amended Statement of Claim filed by Respondent Agostini on or about: November 12,
2012.
Amended Statement of Claim filed by Respondent Zoller on or about: November 15,
2012.
Amended Statement of Claim filed by Respondent Burgess on or about: November 15,
2012.
Amended Statement of Claim filed by Respondent Simmons on or about: November
15, 2012.

First Amended Answer and Counterclaim filed by Claimants on or about: December 21,
2012.

Answer to First Command's Counterclaim filed by Respondent Agostini on his behalf
and that of all Individual Respondents and Respondent DaVinci on or about: January 8,
2013.

**Emergency Motion to Establish Venue in Tarrant County, Texas ("Tarrant
County"), for Hearing on Application for Permanent Injunctive Relief filed by
Claimants on or about: May 12, 2012.**
Response to Emergency Motion to Establish Venue in Tarrant County, Texas, for
Hearing on Application for Permanent Injunctive Relief filed by Respondent LPL on or
about: May 15, 2012.
Reply to Respondents' Response to Emergency Motion to Establish Venue in Tarrant
County, Texas, for Hearing on Application for Permanent Injunctive Relief filed by
Claimants on or about: May 16, 2012.
Sur-Reply to Claimants' May 16, 2012, Reply to Respondents' Response to Emergency
Motion to Establish Venue in Tarrant County, Texas, for Hearing on Application for
Permanent Injunctive Relief filed by the Respondents Agostini, Bodie, Burgess, Hill,
Paschal, Zoller, Simmons and Wilson on or about: June 20, 2012.
Motion to Enforce the Parties' Agreement to Have the FINRA Hearing in Fort Worth,
Tarrant County, Texas filed by Claimants on or about: June 20, 2012.

**Request for Clarification of Order on Request for Permanent Injunction dated July
16, 2012, filed by all Respondents on or about: July 17, 2012.**
Motion for Clarification of Order on Request for Permanent Injunction dated July 16,
2012, and Opposition to Respondents' July 17, 2012, Request for Clarification filed by
Claimants on or about: July 18, 2012.
Response to Motion for Clarification of Order on Request for Permanent Injunction filed
by Respondents on or about: July 19, 2012.

**Motion to Combine Claims with Pending FINRA Arbitrations filed by Claimants on
or about: October 1, 2012.**

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 5 of 25

**Rule 13308 Motion to Bar Untimely Asserted Defenses and Facts as to the [Individual Respondents and Respondent DaVinci] and to Strike Untimely Counterclaim by Respondent LPL (the "Motion to Bar") filed by Claimants on or about: November 1, 2012.**
Opposition to Claimants' Motion to Bar filed by Respondent LPL on or about: November 5, 2012.
Reply to Respondent LPL's Response in Opposition to Claimants' Motion to Bar filed by Claimants on or about: November 9, 2012.
Opposition to Claimants' Motion to Bar filed by Respondent Agostini on or about: November 12, 2012.
Opposition to Claimants' Motion to Bar filed by Respondent Burgess on or about: November 14, 2012.
Opposition to Claimants' Motion to Bar filed by Respondent Zoller on or about: November 14, 2012.
Opposition to Claimants' Motion to Bar filed by Respondent Simmons on or about: November 14, 2012.
Reply to Respondents Agostini, Burgess, Simmons and Zoller's Opposition to Claimants' Motion to Bar filed by Claimants on or about: November 15, 2012.

**Motion to Strike and Amend Damages in the Statement of Claim filed by Respondent Agostini on or about: November 12, 2012.**
Motion to Strike and Amend Damages in the Statement of Claim filed by Respondent Zoller on or about: November 15, 2012.
Motion to Strike and Amend Damages in the Statement of Claim filed by Respondent Burgess on or about: November 15, 2012.
Motion to Strike and Amend Damages in the Statement of Claim filed by Respondent Simmons on or about: November 15, 2012.
First Amended Opposition to Respondents Agostini, Burgess, Zoller and Simmons' Motions to Strike and Amend Damages with Amended Statement of Claim filed by Claimants First Command on or about: November 27, 2012.

**Pre-Trial Brief/Motion in Limine on Claimants' Defamation per se filed by Respondent Agostini on or about: May 2, 2013.**

**Pre-Trial Brief/Motion in Limine to Exclude Testimony and Report of an Expert Witness filed by Respondent Agostini on or about: May 2, 2013.**

**The following pleadings were filed in Case Number 12-01688:**

Statement of Claim filed by Claimant Agostini on or about: May 4, 2012.
Claimant Agostini signed the Submission Agreement: June 14, 2012.

Original Answer and Counterclaim and Notice of Motion to Combine Claims with Pending FINRA Arbitration filed by Respondents First Command Planning and First Command Securities on or about: October 1, 2012.

Rule 13503 Motion to Strike and Amend Damages in the Statement of Claim filed by Claimant Agostini on or about: October 22, 2012.
Answer to Counterclaim of Respondents First Command Planning and First Command

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 6 of 25

Securities, Amended Statement of Claim, Motion to Strike, and Motion to Amend
Statement of Claim filed by Claimant Agostini on or about: October 22, 2012.
Answer in Opposition to Claimant Agostini's Motions to Strike and Amend Damages and
Statement of Claim filed by Respondents First Command Planning and First Command
Securities on or about: November 1, 2012.
Amended Statement of Claim filed by Claimant Agostini on or about: November 2,
2012.

### The following pleadings were filed in Case Number 12-01746:

Statement of Claim filed by Claimant Burgess on or about: June 20, 2012.
Claimant Burgess signed the Submission Agreement: June 25, 2012.

Original Answer and Counterclaim and Notice of Motion to Combine Claims with
Pending FINRA Arbitration filed by Respondents First Command Planning and First
Command Securities on or about: October 1, 2012.

Rule 13503 Motion to Strike and Amend Damages in the Statement of Claim filed by
Claimant Burgess on or about: October 22, 2012.
Answer to Counterclaim of Respondents First Command Planning and First Command
Securities, Amended Statement of Claim, Motion to Strike, and Motion to Amend
Statement of Claim filed by Claimant Burgess on or about: October 22, 2012.
Answer in Opposition to Claimant Burgess' Motions to Strike and Amend Damages and
Statement of Claim filed by Respondents First Command Planning and First Command
Securities on or about: November 1, 2012.
Amended Statement of Claim filed by Claimant Burgess on or about: November 2,
2012.

### The following pleadings were filed in Case Number 12-01747:

Statement of Claim filed by Claimant Zoller on or about: June 20, 2012.
Claimant Zoller signed the Submission Agreement: June 25, 2012.

Original Answer and Counterclaim and Notice of Motion to Combine Claims with
Pending FINRA Arbitration filed by Respondents First Command Planning and First
Command Securities on or about: October 1, 2012.

Rule 13503 Motion to Strike and Amend Damages in the Statement of Claim filed by
Claimant Zoller on or about: October 22, 2012.
Answer to Counterclaim of Respondents First Command Planning and First Command
Securities, Amended Statement of Claim, Motion to Strike, and Motion to Amend
Statement of Claim filed by Claimant Zoller on or about: October 22, 2012.
Answer in Opposition to Claimant Zoller's Motions to Strike and Amend Damages and
Statement of Claim filed by Respondents First Command Planning and First Command
Securities on or about: November 1, 2012.
Amended Statement of Claim filed by Claimant Zoller on or about: November 2, 2012.

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 7 of 25

## The following pleadings were filed in Case Number 12-01748:

Statement of Claim filed by Claimant Simmons on or about: June 20, 2012.
Claimant Simmons signed the Submission Agreement: June 25, 2012.

Original Answer and Counterclaim and Notice of Motion to Combine Claims with
Pending FINRA Arbitration filed by Respondents First Command Planning and First
Command Securities on or about: October 1, 2012.

**Rule 13503 Motion to Strike and Amend Damages in the Statement of Claim filed
by Claimant Simmons on or about: October 22, 2012.**
Answer to Counterclaim of Respondents First Command Planning and First Command
Securities, Amended Statement of Claim, Motion to Strike, and Motion to Amend
Statement of Claim filed by Claimant Simmons on or about: October 22, 2012.
Answer in Opposition to Claimant Simmons' Motions to Strike and Amend Damages
and Statement of Claim filed by Respondents First Command Planning and First
Command Securities on or about: November 1, 2012.
Amended Statement of Claim filed by Claimant Simmons on or about: November 2,
2012.

## CASE SUMMARY

### The following case summary applies to Case Number 12-01697:

In the Statement of Claim and Application for Permanent Injunctive Order, as amended
and consolidated, Claimants First Command asserted the following causes of action:
1) breach of contract; 2) misappropriation of trade secrets; 3) unfair competition;
4) tortious interference with existing contracts and prospective business relationships;
5) conversion; and 6) conspiracy. The causes of action relate to the Individual
Respondents' departure from Claimants' employment and alleged retention of
information and materials belonging to Claimants First Command.

Unless specifically admitted in their respective Answers, Amended Statements of
Claim/Counterclaims, as amended and consolidated, the Individual Respondents,
Respondent DaVinci and Respondent LPL denied the allegations made in the Statement
of Claim, as amended and consolidated, and asserted various affirmative defenses.

In their Statements of Claim, as amended and consolidated, Respondents Agostini,
Burgess, Zoller and Simmons asserted the following causes of action:
1) misclassification as independent contractors; 2) unjust enrichment; 3) commercial
disparagement; 4) prohibition from working in a chosen profession based on an
overbroad non-compete solicitation provision in the Individual Respondents'
employment agreements; 5) failure to compensate the Individual Respondents with their
Deferred Career Commission Plan ("DCCP") and Mission Accomplishment Plan
("MAP") deferred compensation accounts, and other benefits and compensation; and
6) breach of contract. In addition to the above causes of action, Respondent Agostini
further asserted a claim of defamation/slander against Claimants. The causes of action
relate to the alleged changes from a commission-based sales model to a fee-based
fiduciary agency model, and back to a commission-based sales model, which allegedly

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 8 of 25

affected the Individual Respondents' compensation and led them to terminate their employment with Claimants.

In its Counterclaim, Respondent LPL asserted the cause of action of abuse of process. The cause of action relates to the alleged frivolous naming of Respondent LPL in Claimants' Statement of Claim, as amended and consolidated.

Unless specifically admitted in their Answer, Claimants First Command denied the allegations made in Respondents Agostini, Burgess, Simmons and Zoller's Statements of Claims, as amended and consolidated, and Respondent LPL's Counterclaim and asserted various affirmative defenses.

In their Counterclaim, Claimants First Command asserted the cause of action of business disparagement. The cause of action relates to the publishing of allegedly disparaging words about First Command Planning's economic interest to a third-party.

Unless specifically admitted in their Answers to Claimants First Command's Counterclaim, the Individual Respondents, Respondent DaVinci and Respondent LPL denied the allegations made in the Statement of Claim, as amended and consolidated, and asserted various affirmative defenses.

### The following case summary applies to Case Number 12-01688:

In his Statement of Claim, Respondent Agostini asserted the following causes of action: 1) misclassification as an independent contractor; 2) unjust enrichment; 3) commercial disparagement; 4) prohibition from working in a chosen profession based on an overbroad non-compete solicitation provision in his employment agreement; 5) failure to compensate him for his DCCP and MAP compensation plans, and other benefits and compensation; and 6) breach of contract. The causes of action relate to the alleged changes from a commission-based sales model to a fee-based fiduciary agency model, and back to a commission-based sales model, which allegedly affected his compensation and led him to terminate his employment with Claimants First Command Planning and First Command Securities.

Unless specifically admitted in their Answer, Claimants First Command Planning and First Command Securities denied the allegations made in Respondent Agostini's Statement of Claim and asserted various affirmative defenses.

In its Counterclaim, Respondent First Command Planning asserted the cause of action of business disparagement. The cause of action relates to the publishing of allegedly disparaging words about First Command Planning's economic interest to a third-party.

### The following case summary applies to Case Number 12-01746:

In his Statement of Claim, Respondent Burgess asserted the following causes of action: 1) misclassification as an independent contractor; 2) unjust enrichment; 3) commercial disparagement; 4) prohibition from working in a chosen profession based on an overbroad non-compete solicitation provision in his employment agreement; 5) failure to compensate him for his DCCP and MAP compensation plans, and other benefits and

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 9 of 25

compensation; and 6) breach of contract. The causes of action relate to the alleged
changes from a commission-based sales model to a fee-based fiduciary agency model,
and back to a commission-based sales model, which allegedly affected his
compensation and led him to terminate his employment with Claimants First Command
Planning and First Command Securities.

Unless specifically admitted in their Answer, Claimants First Command Planning and
First Command Securities denied the allegations made in Respondent Burgess'
Statement of Claim and asserted various affirmative defenses.

In its Counterclaim, Respondent First Command Planning asserted the cause of action
of business disparagement. The cause of action relates to the publishing of allegedly
disparaging words about First Command Planning's economic interest to a third-party.

**The following case summary applies to Case Number 12-01747:**

In his Statement of Claim, Respondent Zoller asserted the following causes of action:
1) misclassification as an independent contractor; 2) unjust enrichment; 3) commercial
disparagement; 4) prohibition from working in a chosen profession based on an
overbroad non-compete solicitation provision in his employment agreement; 5) failure to
compensate him for his DCCP and MAP compensation plans, and other benefits and
compensation; and 6) breach of contract. The causes of action relate to the alleged
changes from a commission-based sales model to a fee-based fiduciary agency model,
and back to a commission-based sales model, which allegedly affected his
compensation and led him to terminate his employment with Claimants First Command
Planning and First Command Securities.

Unless specifically admitted in their Answer, Claimants First Command Planning and
First Command Securities denied the allegations made in Respondent Zoller's Statement
of Claim and asserted various affirmative defenses.

In its Counterclaim, Respondent First Command Planning asserted the cause of action
of business disparagement. The cause of action relates to the publishing of allegedly
disparaging words about First Command Planning's economic interest to a third-party.

**The following case summary applies to Case Number 12-01748:**

In his Statement of Claim, Respondent Simmons asserted the following causes of
action: 1) misclassification as an independent contractor; 2) unjust enrichment;
3) commercial disparagement; 4) prohibition from working in a chosen profession based
on an overbroad non-compete solicitation provision in his employment agreement;
5) failure to compensate him for his DCCP and MAP compensation plans, and other
benefits and compensation; and 6) breach of contract. The causes of action relate to
the alleged changes from a commission-based sales model to a fee-based fiduciary
agency model, and back to a commission-based sales model, which allegedly affected
his compensation and led him to terminate his employment with Claimants First
Command Planning and First Command Securities.

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01888, 12-01746, 12-01747 and 12-01748
Award Page 10 of 25

Unless specifically admitted in their Answer, Claimants First Command Planning and
First Command Securities denied the allegations made in Respondent Simmons'
Statement of Claim and asserted various affirmative defenses.

In its Counterclaim, Respondent First Command Planning asserted the cause of action
of business disparagement. The cause of action relates to the publishing of allegedly
disparaging words about First Command Planning's economic interest to a third-party.

## RELIEF REQUESTED

### The following relief was requested in Case Number 12-01697:

In the Statement of Claim, as amended and consolidated, Claimants First Command
requested:  1) a permanent injunctive Order restraining the Individual Respondents, for
a period of two years from inducing, soliciting, or assisting others in the inducement and
solicitation of any client of First Command to liquidate and/or transfer their account to
any broker dealer; 2) a permanent injunctive Order restraining the Individual
Respondents, Respondent DaVinci, and Respondent LPL or any other persons acting
on their behalf from copying, disclosing, transmitting, using, discussing, distributing,
transferring, commenting on or relying on or referring to any of First Command's
documents or parts thereof; 3) a permanent injunctive Order restraining the Individual
Respondents, Respondent DaVinci, and Respondent LPL, for a period of two years,
from initiating contact with or soliciting business from any of First Command's clients;
4) a permanent injunctive Order restraining the Individual Respondents, Respondent
DaVinci, and Respondent LPL or any other persons acting on their behalf from unfairly
competing with First Command by disclosing confidential, proprietary, or trade secret
information of First Command; 5) a permanent injunctive Order restraining the Individual
Respondents, Respondent DaVinci, and Respondent LPL or any other persons acting
on their behalf, for a period of two years, from soliciting, inducing, or persuading any of
First Command's advisors and/or employees from terminating his/her employment with
First Command; 6) a permanent injunctive Order requiring that the Individual
Respondents, Respondent DaVinci, and Respondent LPL or any other persons acting
on their behalf to return any and all of First Command's original records, copies and
derivatives of the confidential information which had been removed from First
Command; 7) a permanent injunctive Order requiring the Individual Respondents to
print and provide a copy to First Command of all the data stored in the Individual
Respondents' computers, and other data storage devices, and to further purge such
data and submit an affidavit to that effect; 8) a permanent injunctive Order restraining
the Individual Respondents, Respondent DaVinci and Respondent LPL from soliciting or
requesting confidential and/or proprietary information from any current First Command
employee, advisor, associate advisor, or affiliated person; 9) compensatory damages in
an amount greater than $1,000,000.00; 10) exemplary damages; 11) attorneys' fees;
12) costs; and 13) all other and further relief that the Panel deemed just and proper.

During the evidentiary hearings, Claimants and Respondents verbally modified and/or
further specified their damages and supplemented their claims with statements of
attorneys' fees and costs filed after the hearing.

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 11 of 25

In their Statements of Answer, as amended and consolidated, the Individual
Respondents and Respondent Davinci requested: 1) dismissal of Claimants First
Command's claims with prejudice; 2) attorneys' fees; 3) costs; and 4) all other general
or equitable relief that the Panel was competent to grant and to which the Individual
Respondents and Respondent DaVinci may be justly entitled.

In their respective Statements of Claims, as amended and consolidated, Respondents
Agostini, Burgess, Zoller and Simmons requested:

**For Respondent Agostini:** 1) an unspecified amount of actual damages, plus pre-
judgment and post-judgment interest at the highest allowable rate; 2) an unspecified
amount of punitive damages; 3) an unspecified amount of incidental and consequential
damages; 4) a declaration that First Command's restrictive covenants and forfeiture
provisions are void and/or that the June 2004 agreement is void as not enforceable;
5) immediate payment of any and all income earned but not paid to him by First
Command in an amount of approximately $22,500.00; 6) immediate payment of any and
all income from his "phantom stock" or MAP shares in an amount of approximately
$576,887.00; 7) immediate payment of any and all income from his deferred
compensation in an amount of approximately $70,372.00; 8) the value of all "lost
benefits" as a result of his improper designation as an independent contractor instead of
as an employee under applicable law including, but not limited to, retirement,
healthcare, Federal Insurance Contributions Act ("FICA")/Federal Unemployment
Compensation Act ("FUCA") and any other fees, costs or expenses he had to pay out of
pocket as a misclassified independent contractor rather than an employee in an amount
of approximately $360,000.00; 9) immediate payment of the amount of lost income
resulting from the transition from the commission-based approach to the fee-based
fiduciary "trusted advisor" model in an amount of approximately $200,000.00;
10) payment for his book of business in the amount of $680,000.00; 11) payment of lost
revenue of at least $50,000.00 as a result of First Command's refusal to permit him to
secure his Series 7 license; 12) a declaration that Respondent Agostini be treated under
the industry's "protocol" permitting him to reach out to each client he had at First
Command in order to advise them that he is no longer at First Command, the reason he
left and to inform the clients that he would like to retain them as clients at his new firm;
13) declaratory and/or injunctive relief, as appropriate, including but not limited to, a
determination/declaration that he was an employee and not an independent contractor
and is entitled to be reimbursed for the value of lost benefits and extra costs he had to
incur by First Command's treatment of Respondent Agostini as an independent
contractor; 14) expungement/amendment of the reason for termination on Respondent
Agostini's Central Registration Depository ("CRD") Form U5; 15) payment for
defamation, slander and/or commercial disparagement in a minimum amount of
$3,500,000.00, plus punitive damages three times the actual damages requested;
16) costs; 17) attorneys' fees; and 18) all other allowable damages and costs.

**For Respondent Burgess:** 1) an unspecified amount of actual damages, plus pre-
judgment and post-judgment interest at the highest allowable rate; 2) an unspecified
amount of punitive damages; 3) an unspecified amount of incidental and consequential
damages; 4) a declaration that First Command's restrictive covenants and forfeiture
provisions are void and/or that the advisor agreement is void as not enforceable;

FINRA Dispute Resolution
Arbitration No. 12-01687 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 12 of 25

5) immediate payment of any and all income earned but not paid to him by First
Command in an amount of approximately $400,000.00; 6) immediate payment of any
and all income from his "phantom stock" or MAP Shares in an amount of approximately
$190,466.00; 7) immediate payment of any and all income from his deferred
compensation in an amount of approximately $9,540.00; 8) the value of all "lost
benefits" as a result of his improper designation as an independent contractor instead of
as an employee under applicable law including, but not limited to, retirement,
healthcare, FICA/FUCA and any other fees, costs or expenses he had to pay out of
pocket as a misclassified independent contractor rather than an employee in an amount
of approximately $350,000.00; 9) immediate payment of the amount of lost income
resulting from the transition from the commission-based approach to the fee-based
fiduciary "trusted advisor" model in an amount of approximately $316,000.00;
10) payment for his book of business in the amount of $303,700.00; 11) payment for
commercial disparagement in a minimum amount of $3,500,000.00, plus punitive
damages three times the actual damages requested; 12) a declaration that Respondent
Burgess be treated under the industry's "protocol" permitting him to reach out to each
client he had at First Command in order to advise them that he is no longer at First
Command, the reason he left and to inform the clients that he would like to retain them
as clients at his new firm; 13) declaratory and/or injunctive relief, as appropriate,
including but not limited to, a determination/declaration that he was an employee and
not an independent contractor and is entitled to be reimbursed for the value of lost
benefits and extra costs he had to incur by First Command's treatment of Respondent
Burgess as an independent contractor; 14) expungement/amendment of the reason for
termination on Respondent Burgess' CRD Form U5; 15) costs; 16) attorneys' fees; 17)
punitive damages; and 18) all other allowable damages and costs.

**For Respondent Zoller:** 1) an unspecified amount of actual damages, plus pre-
judgment and post-judgment interest at the highest allowable rate; 2) an unspecified
amount of punitive damages; 3) an unspecified amount of incidental and consequential
damages; 4) a declaration that First Command's restrictive covenants and forfeiture
provisions are void and/or that the advisor agreement is void as not enforceable;
5) immediate payment of any and all income earned but not paid to him by First
Command in an amount of approximately $1,226,000.00; 6) immediate payment of any
and all income from his "phantom stock" or MAP Shares in an amount of approximately
$303,300.00; 7) immediate payment of any and all income from his deferred
compensation in an amount of approximately $75,000.00; 8) the value of all "lost
benefits" as a result of his improper designation as an independent contractor instead of
as an employee under applicable law including, but not limited to, retirement,
healthcare, FICA/FUCA and any other fees, costs or expenses he had to pay out of
pocket as a misclassified independent contractor rather than an employee in an amount
of approximately $350,000.00; 9) immediate payment of the amount of lost income
resulting from the transition from the commission-based approach to the fee-based
fiduciary "trusted advisor" model in an amount of approximately $175,000.00;
10) payment for his book of business in the amount of $579,400.00; 11) payment for
commercial disparagement in a minimum amount of $3,500,000.00, plus punitive
damages three times the actual damages requested; 12) a declaration that Respondent
Zoller be treated under the industry's "protocol" permitting him to reach out to each
client he had at First Command in order to advise them that he is no longer at First
Command, the reason he left and to inform the clients that he would like to retain them

as clients at his new firm; 13) declaratory and/or injunctive relief, as appropriate,
including but not limited to, a determination/declaration that he was an employee and
not an independent contractor and is entitled to be reimbursed for the value of lost
benefits and extra costs he had to incur by First Command's treatment of Respondent
Zoller as an independent contractor; 14) expungement/amendment of the reason for
termination on Respondent Zoller's CRD Form U5; 15) costs; 16) attorneys' fees;
17) punitive damages; and 18) all other allowable damages and costs.

**For Respondent Simmons:** 1) an unspecified amount of actual damages, plus pre-
judgment and pos-tjudgment interest at the highest allowable rate; 2) an unspecified
amount of punitive damages; 3) an unspecified amount of incidental and consequential
damages; 4) a declaration that First Command's restrictive covenants and forfeiture
provisions are void and/or that the advisor agreement is void as not enforceable;
5) immediate payment of any and all income earned but not paid to him by First
Command in an amount of approximately $425,000.00; 6) immediate payment of any
and all income from his "phantom stock" or MAP Shares in an amount of approximately
$516,450.00; 7) immediate payment of any and all income from his deferred
compensation in an amount of approximately $20,000.00; 8) the value of all "lost
benefits" as a result of his improper designation as an independent contractor instead of
as an employee under applicable law including, but not limited to, retirement,
healthcare, FICA/FUCA and any other fees, costs or expenses he had to pay out of
pocket as a misclassified independent contractor rather than an employee in an amount
of approximately $100,000.00; 9) immediate payment of the amount of lost income
resulting from the transition from the commission-based approach to the fee-based
fiduciary "trusted advisor" model in an amount of approximately $315,000.00;
10) payment for his book of business in the amount of $415,000.00; 11) payment for
commercial disparagement in a minimum amount of $3,500,000.00, plus punitive
damages three times the actual damages requested; 12) a declaration that Respondent
Simmons be treated under the industry's "protocol" permitting him to reach out to each
client he had at First Command in order to advise them that he is no longer at First
Command, the reason he left and to inform the clients that he would like to retain them
as clients at his new firm; 13) declaratory and/or injunctive relief, as appropriate,
including but not limited to, a determination/declaration that he was an employee and
not an independent contractor and is entitled to be reimbursed for the value of lost
benefits and extra costs he had to incur by First Command's treatment of Respondent
Simmons as an independent contractor; 14) costs; 15) attorneys fees; 16) punitive
damages; and 17) all other allowable damages and costs.

In their Statement of Answer to Respondents Agostini, Burgess, Zoller and Simmons'
Counterclaims, Claimants First Command requested: 1) dismissal of Respondents
Agostini, Burgess, Simmons and Zoller's cases with prejudice; 2) an unspecified
amount of special damages, including, without limitation, reputational damages, lost
profits, lost business and expenses to counteract the Individual Respondents'
statements; 3) indemnification by the Individual Respondents as required by the 2004
and 2010 agreements; 4) attorneys' fees; 5) costs; and 6) all other relief, in law or in
equity, to which they are justly entitled.

In the Statement of Answer to Counterclaim, Claimant Burgess did not delineate any
specific relief requests.

Haynes and Boone,LLP 11/6/2013 2:59:09 PM PAGE 21/035 Fax Server
Case 4:13-cv-00926-O Document 1-1 Filed 11/18/13 Page 19 of 33 PageID 24

Nov. 6. 2013 8:51AM                                                      No. 6102  P. 14
FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 14 of 25

In its Statement of Answer and Counterclaim, Respondent LPL requested: 1) an
unspecified amount of actual damages; 2) an unspecified amount of punitive damages;
3) dismissal of Claimants First Command's claims in their entirety and with prejudice;
4) a finding of liability for abuse of process in naming Respondent LPL in this arbitration;
5) costs; 6) attorneys' fees; and 7) such other relief as the Panel deemed fair and
equitable.

In their Statement of Answer to Respondent LPL's Counterclaim, Claimants First
Command requested: 1) Respondent LPL's Counterclaim be stricken; 2) Respondent
LPL's Counterclaim be dismissed with prejudice; 3) attorneys' fees; 4) costs; and 5) all
other relief, in law or in equity, to which they are justly entitled.

During the evidentiary hearings, all the Individual Respondents verbally requested
expungement of the termination language referenced in Section 3 of their Forms U5s.

During the evidentiary hearings, Respondents Bodie, Hill, Paschall and Wilson moved
to arbitrate their right to compensation from the MAP, Elective Deferral Account ("EDA"),
and DCCP plans.

### The following relief was requested in Case Number 12-01688:

In the Statement of Claim, Claimant Agostini requested: 1) an unspecified amount of
actual damages, plus pre-judgment and post-judgment interest at the highest allowable
rate; 2) an unspecified amount of punitive damages; 3) an unspecified amount of
incidental and consequential damages; 4) a declaration that First Command's restrictive
covenants and forfeiture provisions are void and/or that the June 2004 agreement is
void as not enforceable; 5) immediate payment of any and all income earned but not
paid to him by First Command in an amount of approximately $471,000.00;
6) immediate payment of any and all income from his "phantom stock" or MAP Shares
in an amount of approximately $460,000.00; 7) immediate payment of any and all
income from his deferred compensation in an amount of approximately $70,372.00;
8) the value of all "lost benefits" as a result of his improper designation as an
independent contractor instead of as an employee under applicable law including, but
not limited to, retirement, healthcare, FICA/FUCA and any other fees, costs or expenses
he had to pay out of pocket as a misclassified independent contractor rather than an
employee in an amount of approximately $360,000.00; 9) immediate payment of the
amount of lost income resulting from the transition from the commission-based
approach to the fee-based fiduciary "trusted advisor" model in an amount of
approximately $200,000.00; 10) payment for his book of business in the amount of
$680,000.00; 11) payment of lost revenue of at least $50,000.00 as a result of First
Command's refusal to permit him to secure his Series 7 license; 12) a declaration that
Claimant Agostini be treated under the industry's "protocol" permitting him to reach out
to each client he had at First Command in order to advise them that he is no longer at
First Command, the reason he left and to inform the clients that he would like to retain
them as clients at his new firm; 13) declaratory and/or injunctive relief, as appropriate,
including but not limited to, a determination/declaration that he was an employee and
not an independent contractor and is entitled to be reimbursed for the value of lost
benefits and extra costs he had to incur by First Command's treatment of Claimant
Agostini as an independent contractor; 14) payment for commercial disparagement;

15) costs; 16) attorneys' fees; 17) punitive damages; and 18) all other allowable damages and costs.

In its Statement of Answer, Respondents First Command requested: 1) consolidation with FINRA Case Number 12-01697; 2) dismissal of Claimant Agostini's case with prejudice; 3) an unspecified amount of special damages for First Command Planning, including, without limitation, reputational damages, lost profits, lost business and expenses to counteract Claimant Agostini's statements; 4) indemnification by Claimant Agostini as required by the 2004 and 2010 agreements; 5) attorneys' fees; 6) costs; and 7) all other relief, in law or in equity, to which First Command is justly entitled.

In the Statement of Answer to Counterclaim, Claimant Agostini did not delineate any specific relief requests.

### The following relief was requested in Case Number 12-01746:

In the Statement of Claim, Claimant Burgess requested: 1) an unspecified amount of actual damages, plus pre-judgment and post-judgment interest at the highest allowable rate; 2) an unspecified amount of punitive damages; 3) an unspecified amount of incidental and consequential damages; 4) a declaration that First Command's restrictive covenants and forfeiture provisions are void and/or that the advisor agreement is void as not enforceable; 5) immediate payment of any and all income earned but not paid to him by First Command in an amount of approximately $380,000.00; 6) immediate payment of any and all income from his "phantom stock" or MAP Shares in an amount of approximately $126,340.00; 7) immediate payment of any and all income from his deferred compensation in an amount of approximately $9,540.00; 8) the value of all "lost benefits" as a result of his improper designation as an independent contractor instead of as an employee under applicable law including, but not limited to, retirement, healthcare, FICA/FUCA and any other fees, costs or expenses he had to pay out of pocket as a misclassified independent contractor rather than an employee in an amount of approximately $350,000.00; 9) immediate payment of the amount of lost income resulting from the transition from the commission-based approach to the fee-based fiduciary "trusted advisor" model in an amount of approximately $310,000.00; 10) payment for commercial disparagement; 11) a declaration that Claimant Burgess be treated under the industry's "protocol" permitting him to reach out to each client he had at First Command in order to advise them that he is no longer at First Command, the reason he left and to inform the clients that he would like to retain them as clients at his new firm; 12) declaratory and/or injunctive relief, as appropriate, including but not limited to, a determination/declaration that he was an employee and not an independent contractor and is entitled to be reimbursed for the value of lost benefits and extra costs he had to incur by First Command's treatment of Claimant Burgess as an independent contractor; 13) costs and attorneys' fees; 14) punitive damages; 15) costs; and 16) all other allowable damages and costs.

In its Statement of Answer, as amended and consolidated, Respondents First Command requested: 1) consolidation with FINRA Case Number 12-01697; 2) dismissal of Claimant Burgess' case with prejudice; 3) an unspecified amount of special damages for First Command Planning, including, without limitation, reputational damages, lost profits, lost business and expenses to counteract Claimant Burgess'

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 16 of 25

statements; 4) indemnification by Claimant Burgess as required by the 2004 and 2010
agreements; 5) attorneys' fees; 6) costs; and 7) all other relief, in law or in equity, to
which First Command is justly entitled.

In the Statement of Answer to Counterclaim, Claimant Burgess did not delineate any
specific relief requests.

### The following relief was requested in Case Number 12-01747:

In the Statement of Claim, Claimant Zoller requested: 1) an unspecified amount of
actual damages, plus pre-judgment and post-judgment interest at the highest allowable
rate; 2) an unspecified amount of punitive damages; 3) an unspecified amount of
incidental and consequential damages; 4) a declaration that First Command's restrictive
covenants and forfeiture provisions are void and/or that the advisor agreement is void
as not enforceable; 5) immediate payment of any and all income earned but not paid to
him by First Command in an amount of approximately $1,204,000.00; 6) immediate
payment of any and all income from his "phantom stock" or MAP Shares in an amount
of approximately $207,384.00; 7) immediate payment of any and all income from his
deferred compensation in an amount of approximately $75,000.00; 8) the value of all
"lost benefits" as a result of his improper designation as an independent contractor
instead of as an employee under applicable law including, but not limited to, retirement,
healthcare, FICA/FUCA and any other fees, costs or expenses he had to pay out of
pocket as a misclassified independent contractor rather than an employee in an amount
of approximately $350,000.00; 9) immediate payment of the amount of lost income
resulting from the transition from the commission-based approach to the fee-based
fiduciary "trusted advisor" model in an amount of approximately $175,000.00;
10) payment for commercial disparagement; 11) a declaration that Claimant Zoller be
treated under the industry's "protocol" permitting him to reach out to each client he had
at First Command in order to advise them that he is no longer at First Command, the
reason he left and to inform the clients that he would like to retain them as clients at his
new firm; 12) declaratory and/or injunctive relief, as appropriate, including but not limited
to, a determination/declaration that he was an employee and not an independent
contractor and is entitled to be reimbursed for the value of lost benefits and extra costs
he had to incur by First Command's treatment of Claimant Zoller as an independent
contractor; 13) costs; 14) attorneys' fees; 15) punitive damages; and 16) all other
allowable damages and costs.

In its Statement of Answer, Respondents First Command requested: 1) consolidation
with FINRA Case Number 12-01697; 2) dismissal of Claimant Zoller's case with
prejudice; 3) an unspecified amount of special damages for First Command Planning,
including, without limitation, reputational damages, lost profits, lost business and
expenses to counteract Claimant Zoller's statements; 4) indemnification by Claimant
Zoller as required by the 2004 and 2010 agreements; 5) attorneys' fees; 6) costs; and
7) all other relief, in law or in equity, to which First Command is justly entitled.

### The following relief was requested in Case Number 12-01748:

In the Statement of Claim, Claimant Simmons requested: 1) an unspecified amount of
actual damages, plus pre-judgment and post-judgment interest at the highest allowable

rate; 2) an unspecified amount of punitive damages; 3) an unspecified amount of incidental and consequential damages; 4) a declaration that First Command's restrictive covenants and forfeiture provisions are void and/or that the advisor agreement is void as not enforceable; 5) immediate payment of any and all income earned but not paid to him by First Command in an amount of approximately $415,000.00; 6) immediate payment of any and all income from his "phantom stock" or MAP Shares in an amount of approximately $150,000.00; 7) immediate payment of any and all income from his deferred compensation in an amount of approximately $20,000.00; 8) the value of all "lost benefits" as a result of his improper designation as an independent contractor instead of as an employee under applicable law including, but not limited to, retirement, healthcare, FICA/FUCA and any other fees, costs or expenses he had to pay out of pocket as a misclassified independent contractor rather than an employee in an amount of approximately $100,000.00; 9) immediate payment of the amount of lost income resulting from the transition from the commission-based approach to the fee-based fiduciary "trusted advisor" model in an amount of approximately $315,000.00; 10) payment for commercial disparagement; 11) a declaration that Claimant Simmons be treated under the industry's "protocol" permitting him to reach out to each client he had at First Command in order to advise them that he is no longer at First Command, the reason he left and to inform the clients that he would like to retain them as clients at his new firm; 12) declaratory and/or injunctive relief, as appropriate, including but not limited to, a determination/declaration that he was an employee and not an independent contractor and is entitled to be reimbursed for the value of lost benefits and extra costs he had to incur by First Command's treatment of Claimant Simmons as an independent contractor; 13) costs; 14) attorneys' fees; 15) punitive damages; and 16) all other allowable damages and costs.

In its Statement of Answer, Respondents First Command requested: 1) consolidation with FINRA Case Number 12-01697; 2) dismissal of Claimant Simmons' case with prejudice; 3) an unspecified amount of special damages for First Command Planning, including, without limitation, reputational damages, lost profits, lost business and expenses to counteract Claimant Simmons' statements; 4) indemnification by Claimant Simmons as required by the 2004 and 2010 agreements; 5) attorneys' fees; 6) costs; and 7) all other relief, in law or in equity, to which First Command is justly entitled.

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

Claimant First Command Financial is a not a member of FINRA but voluntarily submitted to FINRA's jurisdiction by filing a Statement of Claim and executed Submission Agreement and is bound by the determination of the Panel on all issues submitted.
Respondent DaVinci is a not a member of FINRA but voluntarily submitted to FINRA's jurisdiction by filing an Answer and executed Submission Agreement and is bound by the determination of the Panel on all issues submitted.

On or about May 9, 2012, Claimants filed their Statement of Claim and Application for Permanent Injunctive Order. Claimants requested that the case proceed under Rule

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 18 of 25

13804 of the Code of Arbitration Procedure (the "Code"). The Application for
Permanent Injunctive Order reflected that Claimants had filed a Petition for a Temporary
Restraining Order with the 342nd Judicial District Court of Tarrant County, Texas. On
May 9, 2012, said Court issued a Temporary Restraining Order, which allowed the
arbitration to proceed under Rule 13804 of the Code. Subsequently, Claimants pursued
additional injunctive relief from the 48th Judicial District Court of Tarrant County, Texas.
On June 27, 2012, said Court issued a Temporary Injunction Order and Claimants
pursued additional permanent injunctive relief in the arbitration proceeding under Rule
13804.

On or about May 12, 2012, Claimants filed their Emergency Motion to Establish Venue
in Tarrant County, Texas for the Hearing on Application for Permanent Injunctive Relief.
Claimants asserted that venue was proper in Tarrant County based on the Individual
Respondents' signed pre-dispute arbitration agreements and because the Individual
Respondents did not dispute the appropriateness of the Temporary Injunction Order
issued in Texas. Respondent LPL responded that it had not consented to a
venue in Texas, that the Individual Respondents were located in Columbia, South
Carolina and that the FINRA Director of Arbitration had already designated Columbia as
the proper venue. The Individual Respondents concurred with Respondent LPL's
response. Claimants replied that Respondent LPL would not be prejudiced by the
Texas venue and that FINRA had chosen the Columbia, South Carolina venue based
on its internal administrative process. Claimants reiterated that the Individual
Respondents did not contest the contractual validity of the agreements signed
establishing venue in Texas, while working in Columbia. The Individual Respondents
replied that the arbitration agreements, including the venue-selection provisions, were
rendered unenforceable by Claimants' material breaches and that Respondent LPL was
not subject to the Temporary Injunction Order.

On or about June 20, 2012, Claimants filed a Motion to Enforce the Parties' Agreement
to Have the FINRA Hearing in Tarrant County, Texas. Claimants reaffirmed that the
parties had previously agreed in writing to Tarrant County as the venue and that it was
not contested at the time the Temporary Injunction Order was issued.

On or about June 25, 2012, the Panel issued an Order reaffirming the hearing location
to be Columbia, South Carolina.

On July 10-14, 2012, the Panel held in-person hearings on Claimants First Command's
Application for Permanent Injunctive Order and subsequently issued an Order denying
Claimants' Application on July 16, 2012.

On or about July 17, 2012, Respondents filed their Request for Clarification of the
Panel's Order on Request for Permanent Injunction entered on July 16, 2012.
Respondents sought to clarify the Panel's decision that, while an agreement existed
between the parties as to the choice of law, the agreement was not enforceable and
that it should be reflected in a revised Order. Claimants disagreed with the language
proposed by Respondents and argued that the language would do more than just state
what state law was applied. As an alternative, Claimants proposed state-specific
language to be adopted in a revised Order. On July 18, 2013, Claimants filed a Motion
for Clarification of the Order for Permanent Injunction dated July 16, 2012. Claimants

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 19 of 25

sought clarification as to whether the parties should move the Tarrant County court to
modify or dissolve the June 27, 2012, Temporary Injunction Order. In their response,
Respondents proposed that the Panel revise its prior July 16, 2012, Order to reflect the
dissolution of the Temporary Injunction Order, the absence of an enforceable
agreement relating to the choice of law and to make a state-specific reference to South
Carolina.

On or about July 30, 2012, the Panel issued an Order clarifying that their July 16, 2012,
Order required the removal of all restraining Orders, which should be dissolved effective
July 16, 2012.

On or about October 1, 2012, Claimants filed their Motion to Combine Case Numbers
12-01688, 12-01746, 12-01747, 12-01748 and 12-01697, to which Respondents LPL,
DaVinci, and the Individual Respondents agreed. On or about October 30, 2013, the
Panel issued an Order that granted Claimants' Motion.

On or about November 30, 2012, Claimants filed their Motion to Bar. Claimants
asserted that Respondent DaVinci and the Individual Respondents had not filed
Statements of Answer, and that Respondent LPL's Answer was not timely filed.
Claimants added that Respondent LPL's filing of its Counterclaim after four months of
litigation was untimely and prejudicial to Claimants. Respondent LPL responded that its
Answer and Counterclaim were timely and that Rule 13207 of the Code provided for the
parties' ability to extend the answer due date. Respondent LPL stated, among other
things, that the Panel's July 17, 2012, clarification of the Order on the injunctive portion
of the case stayed the arbitration so the parties could attempt to resolve the damages
portion of the claims. Claimants replied that Respondent LPL was required to answer
the damages portion of the Statement of Claim pursuant to Rule 13303 of the Code,
and never sought an extension of time to answer under Rule 13207 of the Code.

In their respective Oppositions to Claimants' Motion to Bar, Respondent DaVinci and
the Individual Respondents adopted Respondent LPL's previously-briefed positions with
regard to the Motion. Specifically, they alleged that the injunctive and damages claims
were initially bifurcated and later joined through the Panel's Injunctive Order directing
the parties to engage in a dialogue to resolve the damage claims. They added that
Claimants would not be prejudiced in any way by letting the Panel hear the
Respondents present their case. On or about November 30, 2012, the Panel heard the
parties' oral arguments during a telephonic pre-hearing conference and subsequently
denied the Claimants' Motion to Bar.

On or about November 12 and 15, 2012, Respondents Agostini, Zoller, Burgess and
Simmons filed their Motions to Strike and Amend Damages. In the motions, these
Respondents sought to strike language referring to a "wedge complaint" in Claimants'
Answers and Counterclaims, as consolidated, and to amend damages in the
Statements of Claims filed in the subordinate cases prior to consolidation. The "wedge
complaint" language was based on these Respondents' alleged failure to submit a
Statement of Claim detailing any facts or claims until over a month after Claimants filed
their Statement of Claim containing detailed facts and after a five-day hearing in the
Tarrant County Court. Claimants did not oppose the requests to amend. However,
Claimants opposed the Motions to Strike the "wedge complaint" language on the ground

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 20 of 25

that it was inaccurate, among other reasons. On or about December 13, 2012, the
Panel entered an Order granting Respondents Agostini, Burgess, Zoller and Simmons'
requests to amend. The Panel did not address the Motion to Strike in their December
13, 2012, Order.

On or about May 2, 2013, Respondent Agostini filed Motions in Limine on Claimants'
Defamation Per Se and to Exclude Testimony and Report of One of Claimants' Expert
Witnesses. In the Motion in Limine on Claimants' Defamation Per Se, Respondent
Agostini sought a finding by the Panel that he had been damaged by Claimants'
references on his Form U5. In his Motion in Limine to Exclude Testimony and Report of
one of Claimants' expert witnesses, Respondent Agostini argued that an expert's legal
conclusions are usually inadmissible in courts as they usurp the judge or the jury's duty
to set forth the law. No written responses were filed. On May 3, 2013, the Panel
conducted a telephonic pre-hearing conference to hear the parties' oral arguments on
the Motions in Limine and denied both Motions with the caveat that Respondent
Agostini may raise objections to the Claimants' expert's testimony during the evidentiary
hearings.

During the evidentiary hearings, Claimants made an ore tenus Motion to Dismiss the
Individual Respondents' claims for payment of their MAP, EDA, and DCCP benefits,
arguing that the matter was not subject to arbitration. The Individual Respondents
replied that their claims to payment of the MAP, EDA, and DCCP benefits were
encompassed in the parties' pre-dispute agreements to arbitrate. After deliberating, the
Panel found that the claims to the MAP, EDA, and DCCP benefits were subject to
arbitration before the Panel. Therefore, the Panel denied Claimants First Command's
Motion to Dismiss.

The parties have agreed that the Award in this matter may be executed in counterpart
copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing,
and post-hearing submissions, the majority of the Panel has decided in full and final
resolution of the issues submitted for determination as follows:

1.    First Command shall pay to Respondents their total deferred compensation (the
      total of the balances in their MAP, EDA, and DCCP accounts) which would have
      been vested on May 4, 2012, if the parties had agreed the terminations of the
      Individual Respondents were voluntary and not for cause by First Command.
      Each Respondent's total deferred compensation shall be offset by the net
      amounts due to First Command for Future Incentive Commissions ("FIC")
      recoupment and expenses after fees and commissions due to them are applied
      (Respondents Hill and Wilson did not have deferred compensation balances, and
      shall be liable to First Command for FIC recoupments and expenses offset by
      any commissions and fees due to them). The amounts due to each party are set
      forth in the table attached as Exhibit A.

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 21 of 25

2.  In addition to the amounts owed under Exhibit A, Respondents Agostini, Zoller, Burgess, and DaVinci shall also pay $200,000.00 to First Command in compensatory damages. These Respondents shall be jointly and severally liable for this award.

3.  The credit card obligations of Respondents Agostini, Bodie and Burgess' loans secured by mutual funds detailed in First Command's Exhibit 3 to their Response to the Panel's Request for Supplemental Information dated August 9, 2013, shall remain in effect according to the terms of their respective loan agreements; and

4.  No punitive damages are awarded; and

5.  No interest is awarded; and

6.  No attorneys' fees, costs, or other damages are awarded; and

7.  No specific performance is granted; and

8.  No injunctive relief is granted; and

9.  The Panel recommends the expungement of the reason for termination, "Discharged" from Section 3 of the below Individual Respondents' Amended Forms U5 filed by First Command Planning on September 28, 2012, and maintained by the CRD. The Panel recommends that the reason for termination be changed to "Voluntary" and the accompanying termination comments, including the language explaining the reason for amending the reason for termination, be expunged in their entirety and left blank. These recommendations also apply to the Termination Explanations that appear on the Individual Respondents' Forms U5 filed on May 7, 2012.

| Names and CRD Numbers |
|---|
| James Stuart Agostini (CRD # 2596320) |
| Jeanine Ann Bodie (CRD # 5068564) |
| Shelby Stanley Hill (CRD # 4137605) |
| Bradford Joel Wilson (CRD # 5660253) |
| Patrick Paul Burgess (CRD # 4039255) |
| Robert Sheldon Paschal (CRD # 5742600) |
| Stephen Edwin Simmons (CRD # 868997) |
| Jeb Stuart Zoller (CRD # 4622591) |

In addition, the Panel recommends that the "Yes" answers to the Internal Review Disclosure Questions 7B on the above Respondents' Forms U5

Haynes and Boone,LLP 11/6/2013 2:59:09 PM PAGE 29/035 Fax Server
Case 4:13-cv-00926-O Document 1-1 Filed 11/18/13 Page 27 of 33 PageID 32

Nov. 6. 2013 8:54AM                                                No.6102   P. 22
FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 22 of 25

filed on May 7, 2012, and Amended Forms U5 filed on September 28, 2012, be changed to "No" and the accompanying Disclosure Reporting Pages be deleted in their entirety. The Panel makes these recommendations based on the defamatory nature of the information. Respondents' registration records are not automatically amended including the changes indicated above. The Respondents must forward a copy of this Award to FINRA's Registration and Disclosure Department for the amendments to be incorporated into their registration records.

The Panel finds that Claimant First Command Planning's statements in the Individual Respondents' Forms U5 were defamatory in nature. The Panel's ruling is supported by the evidence and testimony received during the evidentiary hearings in this matter. Specifically, the Panel finds that none of the Individual Respondents committed fraud, wrongfully took property, or violated investment-related statutes, regulations, rules or industry standards of conduct. This matter was essentially a private dispute of a contractual nature, and does not warrant these disclosures. In addition, the Forms U5 are misleading and defamatory in that they would lead a third-party to conclude that the Individual Respondents were terminated by First Command Planning, when in fact, they terminated their employment relationships voluntarily; and

10. Respondent LPL's Counterclaim is hereby denied; and

11. Any and all relief not specifically addressed herein is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
FINRA Dispute Resolution assessed a filing fee* for each claim:

| | |
|---|---|
| Initial Claim Filing Fee | =$ 3,200.00 |
| Respondent LPL's Counterclaim Filing fee | =$ 1,500.00 |

*The filing fee is made up of a non-refundable and a refundable portion.

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm(s) that employed the associated person(s) at the time of the event(s) giving rise to the dispute. Accordingly, as parties, Claimants First Command Planning and First Command Securities and Respondent LPL are assessed the following:

For First Command Planning:

| | |
|---|---|
| Member Surcharge | =$ 2,800.00 |
| Pre-Hearing Processing Fee | =$ 750.00 |
| Hearing Processing Fee | =$ 5,000.00 |

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 23 of 25

For First Command Securities:

| | |
|---|---|
| Member Surcharge | =$ 2,800.00 |
| Pre-Hearing Processing Fee | =$ 750.00 |
| Hearing Processing Fee | =$ 5,000.00 |

For LPL:

| | |
|---|---|
| Member Surcharge | =$ 2,800.00 |
| Pre-Hearing Processing Fee | =$ 750.00 |
| Hearing Processing Fee | =$ 5,000.00 |

**Adjournment Fees**
Adjournments granted during these proceedings for which fees were assessed:

| | |
|---|---|
| May 25, 2012, adjournment by the parties | =$ 1,200.00 |

The Panel has assessed $600.00 of the adjournment fees to Claimants First Command Planning and First Command Services, jointly and severally.

The Panel has assessed $600.00 of the adjournment fees all Respondents, jointly and severally.

**Injunctive Relief Fees**
Injunctive relief fees are assessed to each member or associated person who files for a temporary injunction in court. Parties in these cases are also assessed arbitrator travel expenses and costs when an arbitrator is required to travel outside his or her hearing location and additional arbitrator honoraria for the hearing for permanent injunction. These fees, except the injunctive relief surcharge, are assessed equally against each party unless otherwise directed by the panel.

1. Claimants First Command Planning, First Command Securities and First Command Financial Services are jointly and severally assessed the following injunctive fees:

| | |
|---|---|
| Injunctive relief surcharge | =$ 2,500.00 |
| Additional arbitrator honoraria | =$ 1,625.00 |
| Arbitrator travel expenses and costs | =$ 231.42 |

2. Respondent LPL is assessed the following injunctive fees:

| | |
|---|---|
| Additional arbitrator honoraria | =$ 325.00 |
| Arbitrator travel expenses and costs | =$ 46.28 |

3. Respondents Agostini, Zoller, Burgess and DaVinci are jointly and severally assessed the following injunctive fees:

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 24 of 25

| | |
|---|---|
| Additional arbitrator honoraria | =$ 1,300.00 |
| Arbitrator travel expenses and costs | =$    185.12 |

### Hearing Session Fees and Assessments

The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

Four (4) Pre-hearing sessions with the Panel @ $1,200.00/session                  =$ 4,800.00

| Pre-hearing conferences: | December 11, 2012 | 1 session |
|---|---|---|
| | April 25, 2013 | 1 session |
| | May 3, 2013 | 1 session |
| | May 10, 2013 | 1 session |

Ten (10) Injunctive hearing sessions with the Panel @ $1,200.00/session    =$12,000.00

| Hearing Dates: | July 10, 2012 | 3 sessions |
|---|---|---|
| | July 11, 2012 | 3 sessions |
| | July 12, 2012 | 2 sessions |
| | July 14, 2012 | 2 sessions |

Thirty-one (31) Hearing sessions with the Panel @ $1,200.00/session           =$37,200.00

| Hearing Dates: | May 13, 2013 | 1 session |
|---|---|---|
| | May 14, 2013 | 2 sessions |
| | May 15, 2013 | 3 sessions |
| | May 16, 2013 | 3 sessions |
| | May 17, 2013 | 2 sessions |
| | May 20, 2013 | 3 sessions |
| | May 21, 2013 | 3 sessions |
| | May 22, 2013 | 3 sessions |
| | May 23, 2013 | 2 sessions |
| | May 24, 2013 | 2 sessions |
| | May 28, 2013 | 3 sessions |
| | May 29, 2013 | 2 sessions |
| | May 30, 2013 | 2 sessions |

Total Hearing Session Fees                                                                          =$54,000.00

The Panel has assessed $27,000.00 of the hearing session fees to Claimants First Command, jointly and severally.

The Panel has assessed $21,600.00 of the hearing session fees to Respondents Agostini, Zoller, Burgess and DaVinci, jointly and severally.

The Panel has assessed $5,400.00 of the hearing session fees to Respondent LPL.

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

## EXHIBIT A

| A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|
| As of April 30, 2012 | DAP Balance | EDA Balance | DCCP Balance | Total Deferred Compensation Due to Each Respondent (B+C+D) | Commissions and Fees | FIC Recoupments and Debits for Various Expenses | Draw Balances | Total Due to First Command (Commissions and Fees *Minus* FIC Recoupments and Expenses) (F+G+H) | Net Amount Due to Respondent or First Command (Total Deferred Compensation Due to Each Respondent *Minus* Total Due to First Command) (E-I) |
| James Stuart Agostini | $460,287.43 | $0.00 | $70,797.36 | $531,084.79 | $14,607.60 | -$34,377.87 | -$58,147.17 | -$77,917.24 | $453,167.55 |
| Joanna Ann Bodie | $6,480.00 | $0.00 | $0.00 | $6,480.00 | $0.00 | -$189.00 | $0.00 | -$189.00 | $6,291.00 |
| Patrick Paul Burgess | $126,340.48 | $6,872.90 | $9,597.78 | $142,811.16 | $1,974.84 | -$6,072.47 | -$29,331.63 | -$33,429.45 | $109,381.70 |
| Shelby Stanley Hill | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$135.00 | $0.00 | -$135.00 | -$135.00 |
| Bradford Joel Wilson | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$185.00 | $0.00 | -$185.00 | -$185.00 |
| Jeb Stuart Zoller | $201,400.35 | $0.00 | $6,948.10 | $208,348.45 | $10,468.94 | -$19,098.37 | $0.00 | -$8,629.53 | $199,718.92 |
| Stephen Edwin Simmons | $192,126.06 | $39,488.88 | $99,857.94 | $331,472.88 | -$371.87 | -$16,026.81 | $0.00 | -$16,398.68 | $315,074.20 |

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 25 of 25

## ARBITRATION PANEL

| Charles L.A. Terreni | - | Public Arbitrator, Presiding Chairperson |
| Donald John Andres | - | Public Arbitrator |
| W. Wells Van Pelt, Jr. | - | Non-Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein
and who executed this instrument which is my award.

**Concurring Arbitrators' Signatures**

_____                    11/5/2013
Charles L.A. Terreni                               Signature Date
Public Arbitrator, Presiding Chairperson


_____                    _____
Donald John Andres                                 Signature Date
Public Arbitrator

**Dissenting Arbitrator's Signature**


_____                    _____
W. Wells Van Pelt, Jr.                             Signature Date
Non-Public Arbitrator



NOVEMBER 6, 2013
Date of Service (For FINRA Dispute Resolution office use only)

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 25 of 25

## ARBITRATION PANEL

| | | |
|---|---|---|
| Charles L.A. Terreni | - | Public Arbitrator, Presiding Chairperson |
| Donald John Andres | - | Public Arbitrator |
| W. Wells Van Pelt, Jr. | - | Non-Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument which is my award.

## Concurring Arbitrators' Signatures

_____          _____
Charles L.A. Terreni                          Signature Date
Public Arbitrator, Presiding Chairperson

*Donald John Andres* (signature)             11/1/2013
_____          _____
Donald John Andres                            Signature Date
Public Arbitrator

## Dissenting Arbitrator's Signature

_____          _____
W. Wells Van Pelt, Jr.                        Signature Date
Non-Public Arbitrator

NOVEMBER 6, 2013
_____
Date of Service (For FINRA Dispute Resolution office use only)

FINRA Dispute Resolution
Arbitration No. 12-01697 consolidated with Arbitration Nos. 12-01688, 12-01746, 12-01747 and 12-01748
Award Page 25 of 25

## ARBITRATION PANEL

Charles L.A. Terreni          -     Public Arbitrator, Presiding Chairperson
Donald John Andres .          -     Public Arbitrator
W. Wells Van Pelt, Jr.        -     Non-Public Arbitrator

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein
and who executed this instrument which is my award.

**Concurring Arbitrators' Signatures**

_____          _____
Charles L.A. Terreni                        Signature Date
Public Arbitrator, Presiding Chairperson


_____          _____
Donald John Andres                          Signature Date
Public Arbitrator

**Dissenting Arbitrator's Signature**

_____          _____
W. Wells Van Pelt, Jr.                      Signature Date
Non-Public Arbitrator


_____
NOVEMBER 6, 2013
Date of Service (For FINRA Dispute Resolution office use only)